# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
### NORTHERN DIVISION

WILLIAM J. VAJK and GLORIA C. VAJK,

        Plaintiffs,

                               File No.  2:10-CV-114

v.

                               HON. ROBERT HOLMES BELL

CITY OF IRON RIVER, MICHIGAN, et al.,

        Defendants.

_____/

## O P I N I O N

Plaintiffs William J. Vajk and Gloria C. Vajk, appearing pro se, filed this civil rights action against the City of Iron River, Michigan (the "City"), City Treasurer Suzanne Johnson, Public Works Foreman Richard Anderson, City Council members Roger Zanon, Thomas King, Ray Coates, Edward Marcell, and Michael Brozack, (the "City Defendants"), the County of Iron, Michigan, and County Treasurer Marcia Cornelia (the "County Defendants"), and the Michigan Municipal League.  Plaintiffs' complaint arises out of Defendants' enforcement of the City water and nuisance ordinances against them.

This matter comes before the Court on motions to dismiss filed by the City Defendants, the County Defendants, and the Michigan Municipal League, and on Plaintiffs' motion for judgment on the pleadings.  The Court also has before it various motions to amend, to strike, to file, and to stay that have been filed in connection with the dispositive

motions. For the reasons that follow, the Court will grant Defendants' motions to dismiss, and dismiss Plaintiffs' complaint in its entirety.

## I.

Plaintiffs allege that at the time they purchased the property at 413 Plum Street in the City (the "Property"), the water had been shut off for non-payment of the water bill by the prior owner. (Compl. ¶ 6.) The seller paid the water bill up to the date of Plaintiffs' purchase of the Property, but Plaintiffs chose to leave the water shut off. (*Id.*) The City began billing Plaintiffs for a "readiness to serve" charge pursuant to § 52.64 of the City water ordinance. The City also charged a 10% late fee pursuant to § 52.69(B) of the ordinance. (*Id.* at ¶ 9.) The City then transferred the "readiness to serve" fees and the late charges to the tax bill for the Property pursuant to § 52.70 of the ordinance. (*Id.* at ¶ 14.) Plaintiffs contend that the "readiness to serve" charge and the late fee are penalties that have been imposed without due process of law, and that the transfer of unpaid water bills to the tax bill is an unconstitutional taking. (*Id.* at ¶¶ 8, 9, 13.) Plaintiffs allege that the City and County Defendants knew or should have known that their actions in enforcing these provisions violated Plaintiffs' constitutional rights. (*Id.* at ¶ 15.) Plaintiffs seek a declaration that §§ 52.64, 52.67(A)(5), 52.67(A)(6), 52.69(B), and 52.70 of the water ordinance are unconstitutional. (*Id.* at ¶ 16.) Plaintiffs also request cancellation and reimbursement of all fees arising out of the "readiness to serve" charge. (*Id.* at ¶ 17.)

Plaintiffs allege that on June 16, 2008, the City mowed the grass at the Property pursuant to the nuisance ordinance without giving prior meaningful notice to Plaintiffs. (*Id.* at ¶ 18.) The charges for mowing were transferred to the tax bill for the Property. (*Id.* at ¶ 19.) Plaintiffs contend that § 91.31 of the nuisance ordinance is unconstitutionally vague, and that notice by publication is constitutionally insufficient. (*Id.* at ¶ 20.) Plaintiffs also contend that the City has violated the Equal Protection clause because it does not enforce the noxious weeds ordinance on City land. Plaintiffs seek a declaration that §§ 91.31, 91.32, 91.33, and 91.35 of the nuisance ordinance are unconstitutional. (*Id.* at § 22.) Plaintiffs contend that Defendants have violated Plaintiffs' civil rights by enforcing the unconstitutional nuisance ordinance. (*Id.* at ¶ 23.)

Plaintiffs allege that the City is a member of the Michigan Municipal League, which provides both insurance and legal advice to the City. (*Id.* at ¶ 24.) Plaintiffs contend that the Michigan Municipal League recommended continuing constitutional violations by the City, and is liable with the City for conspiring to deny Plaintiffs equal protection of the laws in violation of 42 U.S.C § 1985(3) .

All of the Defendants have filed motions pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiffs' complaint for failure to state a claim on which relief can be granted. Plaintiffs have filed a counter-motion for judgment on the pleadings.

## II.

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "construe the

complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff," but the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The plausibility standard is not a "probability requirement," but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id*. In applying this standard, the Court is mindful that pleadings filed by pro se litigants are held "to less stringent standards than formal pleadings drafted by lawyers." *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

In reviewing a motion under Rule 12(b)(6), the Court may consider any document that is an exhibit to a pleading, Fed. R. Civ. P. 10(c), and any document that is referred to in the pleading and is central to the pleader's claim. *Weiner v. Klais and Co., Inc*., 108 F.3d 86,

89 (6th Cir. 1997) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

## III.

Before turning to Defendants' motions to dismiss, the Court will address the certain motions concerning the briefing that the Court should consider in deciding the dispositive motions.

Plaintiffs have filed four motions to strike. Plaintiffs' first motion to strike requests that the affidavit of Kathy Anderson that is attached to the City Defendants' reply brief be stricken pursuant to Rule 12(f) of the Federal Rules of Civil Procedure on the basis that it is immaterial. (Dkt. No. 33, Mot.; Dkt. No. 31, Reply Br., Ex. C, Anderson Aff.) The City Defendants and the Michigan Municipal League contend that the Anderson affidavit is relevant because it addresses disputed facts, but they believe that the Court can resolve their motions to dismiss without reference to the Anderson affidavit. (Dkt. No. 44, Resp. 2.)

The action of striking a pleading is a drastic remedy that should be resorted to only as required for the purposes of justice. *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953). A motion to strike should be granted only when the pleading to be stricken has "no possible relation to the controversy." *Id.* The Anderson affidavit is responsive to factual allegations in Plaintiffs' complaint and response brief. Plaintiffs have not demonstrated a need for striking the affidavit, and their motion to strike will be denied. However, the Court will exclude the affidavit from its consideration of the

motions to dismiss and for judgment on the pleadings. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under rule 56.").

Plaintiffs' second motion to strike is directed at Defendant Michigan Municipal League's reply brief. (Dkt. No. 35). Plaintiffs contend that the reply brief should be stricken "for immateriality and impertinence." (Dkt. No. 36, Br. 1.) Plaintiffs have used the motion to strike to challenge this Defendant's characterization of their argument and Supreme Court authority. Plaintiffs' disagreement with Defendant Michigan Municipal League's argument is not a legitimate basis for striking its brief. Plaintiffs' motion to strike the reply brief will accordingly be denied.

Plaintiffs' third motion to strike is directed at the County Defendants' response to Plaintiffs' motion for judgment on the pleadings. (Dkt. No. 50, Pls.' Mot.; Dkt. No.40, Resp. Br.). Plaintiffs complain that the County Defendants have copied large sections of the City Defendants' brief. This is not a legitimate basis for striking the County's brief. It is not improper for two defendants to take the same position on an argument or to adopt each other's argument. Plaintiffs also oppose the County Defendants' response as time-barred. Plaintiffs' motion for judgment on the pleadings was filed on September 29, 2010. (Dkt. No. 25.) The County Defendants were allowed 28 days to respond to this dispositive motion. W.D. Mich. LCivR 7.2(a), (c). The County Defendants' response, which was filed on

October 25, 2010, was timely. The remainder of Plaintiffs' brief is devoted to the merits of the County Defendants' legal arguments. This is not a proper use of a motion to strike. Plaintiffs' third motion to strike will accordingly be denied.

Plaintiffs' fourth motion to strike is directed at the County Defendants' motion to dismiss and to the City Defendants' and the Michigan Municipal League's response to Plaintiffs' various motions. (Dkt. No. 53.) Plaintiffs contend that the County Defendants' motion to dismiss should be stricken because it is not supported by a brief and because it is time-barred. Rather than filing a duplicative brief, the County Defendants adopted by reference their brief in opposition to Plaintiffs' motion for judgment on the pleadings in support of their motion to dismiss. Moreover, contrary to Plaintiffs' assertions, the motion was not due on or before August 17, 2010. The County Defendants filed an answer to the complaint in a timely fashion. (Dkt. No. 12, County Defs.' Answer.) No deadlines have been set for dispositive motions. Accordingly, the County Defendants' motion to dismiss was not time-barred.

Plaintiffs contend that the City Defendants' and the Michigan Municipal League's response to Plaintiff's motion for judgment on the pleadings (Dkt. No. 43, City Defs.' Resp.) should be stricken because it was not timely. The time for filing a response to a dispositive motion is 28 days, not 21 days as Plaintiffs assert. W. D. Mich. LCivR 7.2(c). Defendants' October 27 response to Plaintiffs' September 29 motion for judgment on the pleadings was timely.

Finally, Plaintiffs contend that the City Defendants' and the Michigan Municipal League's response to Plaintiffs' motions to strike affidavit, to strike reply, and to allow answer (Dkt. Nos. 33, 35, 37) should be stricken because it was untimely. Plaintiffs' motions were filed on October 19, 2010. Under the local rules, Defendants had 14 days to respond to these non-dispositive motions. W.D. Mich. LCivR 7.3. Defendants' October 25 response was timely. Plaintiffs' fourth motion to strike will also be denied.

Plaintiffs have filed a motion to amend their response to Defendant Michigan Municipal League's motion to dismiss. (Dkt. No. 22, Pls.' Resp.; Dkt. No. 28, Pls.' Mot. to Amend.) Plaintiffs' motion to amend will be granted. In ruling on Defendants' motion to dismiss the conspiracy claim, the Court will consider Plaintiffs' response to the motion as amended.

On October 19, 2010, Plaintiffs filed a motion for leave to file an answer to the City Defendants' reply to Plaintiffs' response to the City Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 7(a)(7) . (Dkt. No. 37, Pls.' Mot.). Plaintiffs assert that the City Defendants raised arguments in their reply brief that could have been raised in their initial motion and brief, thus denying Plaintiffs an opportunity to respond. Without deciding whether the arguments raised in the reply brief were proper rebuttal or new arguments, the Court will grant Plaintiffs' motion and will consider their brief (Dkt. No. 38) in conjunction with Defendants' motion to dismiss.

On October 7, 2010, Plaintiffs filed a motion to stay proceedings and to authorize limited discovery. (Dkt. No. 48.) The motion raises new factual arguments regarding the alleged existence of a conspiracy. The motion does not suggest a legitimate reason why the Court should not initially address the motions to dismiss and for judgment on the pleadings before discovery is undertaken. Accordingly, the motion to stay and for discovery will be denied.

On December 13, 2010, Plaintiffs filed a motion to enlarge the time for replying to the City Defendants' and the Michigan Municipal League's November 22 response to Plaintiffs' motions to strike and stay. (Dkt. No. 59.) Plaintiffs filed their proposed reply with the motion. On December 15, 2010, the County Defendants filed a motion for leave to file a late response to Plaintiffs' November 16 and November 18 motions to strike. (Dkt. No. 62). The County Defendants filed their proposed response with the motion.

The Federal Rules of Civil Procedure provide that the Court may extend the time for filing a response, after the time has expired, on a showing of excusable neglect. Fed. R. Civ. P. 6(b)(1)(B). The local rules provide that the Court may, in its discretion, enlarge any time limit established by the local rules with or without prior notice or motion. W.D.Mich. LCivR 7.1(c). Upon review of the motions for enlargement of time, the Court finds good cause for the untimely filings. The Court will accordingly grant Plaintiffs' and the County Defendants' motions for enlargement of time. The Court has considered the proposed filings in conjunction with its consideration of the underlying motions to which they apply.

# IV.

Plaintiffs' complaint challenges the constitutionality of the water ordinance and the nuisance ordinance, and purports to state a civil conspiracy claim under 42 U.S.C. § 1985(3).

## A. Water Ordinance

Plaintiffs complain that the penalties and collection practices used to enforce the water ordinance[1] violate the Bill of Attainder clause and the Due Process clause of the United States Constitution. (Compl. ¶ 5.) Plaintiffs contend that the water ordinance is constitutionally flawed because it imposes penalties without notice or a hearing in violation of the due process clause and determines guilt without trial in violation of the bill of attainder clause.

---

[1] Plaintiffs' complaint focuses on the following provisions of the water ordinance:

- § 52.64 and § 52.67(C) impose a readiness to serve charge in the amount of $25 per month "by every user/property owner having premises connected to the water distribution system which is shut off at the curbstop;"

- § 52.67(A)(6) imposes a $25 delinquent turn-on penalty;

- § 52.69(B) imposes a late charge of 10% of the amount billed;

- § 52.70 imposes a lien against the property for unpaid water bills, and provides for the collection and enforcement of the lien in the same manner as general taxes against the premises.

(Compl. Ex. A, Ch. 52, Water Ordinance.)

The City and County Defendants move for dismissal of Plaintiffs' claims concerning the water ordinance for failure to state a claim on which relief can be granted.

Art. I, § 10 of the United States Constitution provides that no state shall pass any "Bill of Attainder." A bill of attainder is a "law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 468 (1977). The bill of attainder clause prohibits legislatures from engaging in legislative acts "that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial." *Cutshall v. Sundquist*, 193 F.3d 466, 477 (6th Cir. 1999) (quoting *United States v. Brown*, 381 U.S. 437, 448-49 (1965)). In determining whether a law imposes a punishment, the Court considers punishments that historically would have been viewed as violative of the bill of attainder prohibition, whether the challenged law serves legitimate nonpunitive purposes, and whether the legislature intended the law to serve as punishment. *See Id.* (citing *Nixon*, 433 U.S. at 474-78).

The imposition of fees for readiness to serve, for delinquent turn-ons, for non-payment of amounts due, and the transfer of unpaid charges to the tax rolls do not constitute one of the traditional forms of punishment covered by the bill of attainder prohibition. *See Nixon*, 433 U.S. at 474 (listing punishments that historically would have been viewed as violative of the bill of attainder prohibition). Moreover, Plaintiffs' contention that the City will impose the $25 delinquent turn-on fee penalty under § 52.67(A)(6) against them, even though

they were not responsible for the initial non-payment that resulted in the water being turned off, is not ripe for adjudication on the merits. Plaintiffs have not been billed the delinquent turn-on penalty, and Plaintiffs' assertion that they will be charged the $25 delinquent turn-on penalty as opposed to the standard $10 turn-on charge under § 52.67(A)(4) is speculative. Upon review, the Court concludes that the enumerated water ordinance provisions, which are common to many city ordinances, serve legitimate nonpunitive purposes and are not enacted for punishment. Plaintiffs have failed to state a claim that the Iron City water ordinance violates the bill of attainder clause.

Plaintiffs also complain that the water ordinance imposes fees and penalties without due process of law in violation of the Fourteenth Amendment. Plaintiffs do not allege that the ordinance was not properly enacted. They do not allege that Defendants failed to follow the City ordinance, and they do not allege that the ordinance does not apply to their particular circumstances. Rather, their due process argument is based solely on their allegation that the ordinance penalizes them without notice and opportunity to be heard. Plaintiffs do not suggest whether they are complaining of procedural or substantive due process violations.

The "root requirement" of the Due Process Clause is notice and an opportunity to be heard before one is deprived of a significant property interest. *Wedgewood Ltd. P'ship I v. Twp. of Liberty*, 610 F.3d 340, 354 (6th Cir. 2010) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)). However, citizens do not have a due process right to be heard before they are affected by laws of general applicability. *Bi-Metallic Inv. Co. v.*

*State Bd. of Equalization*, 239 U.S. 441, 445 (1915). "Governmental determinations of a general nature that affect all equally do not give rise to a due process right to be heard."

*Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 896 (6th Cir. 1991).

> In altering substantive rights through enactment of rules of general applicability, a legislature generally provides constitutionally adequate process simply by enacting the statute, publishing it, and, to the extent the statute regulates private conduct, affording those within the statute's reach a reasonable opportunity both to familiarize themselves with the general requirements imposed and to comply with those requirements.

*United States v. Locke*, 471 U.S. 84, 108 (1985). Although ordinances passed by a legislative body can "affect the person or property of individuals . . . to the point of ruin," the proper recourse for adversely affected individuals is the political process, not procedural due process as enforced by federal courts. *Bi-Metallic Inv. Co.*, 239 U.S. at 445.

Plaintiffs contend that the general rule articulated in *Locke* does not apply to this case because they are being penalized by the ordinance. Plaintiffs contend that because no water service is being provided to 413 Plum Street, the readiness to serve fee is being imposed as a penalty for not using water. (Compl. ¶ 13(A); Dkt. No. 19, Pls.' Resp. Br. 3.)

The term "readiness to serve charge" is defined in the ordinance as "[t]he charge payable by a user whose water is shut off at the curbstop but remains connected to the city's water distribution system." (Ord. § 52.01.) In other words, the readiness to serve fee is a service fee charged to properties that are connected to the municipal water supply, but who had the water service to the home temporarily shut off at the valve. Plaintiffs allege in their complaint that the water service was shut off for non-payment of water bills by the prior

owner and that Plaintiffs decided to leave the water shut off because they did not need water at the Property at that time. (Compl. ¶ 6.) Plaintiffs do not deny that the Property is still connected to the City water line. Neither do they deny that the City still has an obligation to maintain capacity (readiness to serve) for Plaintiffs' Property. (*See* Ord. § 52.18, providing that the City will provide water service upon written notice and payment of the requisite fees.) Even though the water to the Property has been shut off, Plaintiffs are still "users" under the ordinance because the Property is connected to the water system. (*See* Ord. § 52.01, defining the term "user" as "the owner of real property upon which is located a premises connected to or served by the system."). The municipal water supply stands ready and is being maintained so that it will be available to Plaintiffs if and when they choose to reinstate service. The City's allocation of maintenance costs to those who are connected to the water distribution system is a fee for service, not a penalty.

Because the water ordinance applies generally to all and does not operate as a penalty, Plaintiffs do not have a procedural due process right to be heard before the ordinance is applied to them. Accordingly, Plaintiffs have not stated a claim that the City water ordinance violated their procedural due process rights.

Due process also has a substantive component. "Substantive due process 'serves as a vehicle to limit various aspects of potentially oppressive government action.'" *Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir.1996)). "Interests protected by substantive

14

due process 'include those protected by specific constitutional guarantees, . . . freedom from government actions that shock the conscience, and certain interests that the Supreme Court has found so rooted in the traditions and conscience of our people as to be fundamental.'" *Hussein v. City of Perrysburg*, 617 F.3d 828, 833 (6th Cir. 2010) (quoting *Bell v. Ohio State Univ.*, 351 F.3d 240, 250 (6th Cir.2003)).  "Where government action does not deprive a plaintiff of a particular constitutional guarantee or shock the conscience, that action survives the scythe of substantive due process so long as it is rationally related to a legitimate state interest."  *Valot*, 107 F.3d at 1228.

The imposition of ready to serve charges, the charging of penalties for overdue payments, and the imposition of a lien for non-payment, do not implicate specific constitutional guarantees, do not shock the conscience, and do not implicate interests so rooted in the traditions and conscience of our people as to be fundamental.  *See Mansfield Apartment Owners Ass'n v. City of Mansfield*, 988 F.2d 1469, 1477 (6th Cir. 1993) (rejecting the claim that conditioning the receipt of water service on the satisfaction of past due charges raises the question of a substantive due process violation).  These water ordinance provisions are rationally related to the City's legitimate interest in obtaining payment for public services.

Plaintiffs cite *Smith v. Norton*, 138 N.W.2d 522 (Mich. 1965), for the proposition that the City cannot impose "readiness to serve charges" on persons who are not using the water because to do so would violate the Michigan constitution.  *Smith v. Norton* is readily distinguishable from this case because it involved the imposition of readiness to serve

charges on properties that were not connected to the water lines. Moreover, to the extent Plaintiffs cite *Smith v. Norton* in support of the proposition that the readiness to serve charge amounts to the assessment of taxes in violation of the Headlee Amendment to the Michigan Constitution, Mich. Const. art. IX, §§ 25-33, this claim was not alleged in Plaintiffs' complaint and, in any event, the Court declines to exercise supplemental jurisdiction over this state law claim. 28 U.S.C. § 1367(c).

To the extent Plaintiffs contend that it is unreasonable to provide for the collection of overdue water bills by using the property tax rolls, the contention lacks merit because the City is specifically authorized to do so by state law. *See* Mich. Comp. Laws § 141.121(3) ("Charges for services furnished to a premises may be a lien on the premises, and those charges delinquent for 6 months or more may be certified annually to the proper tax assessing officer or agency who shall enter the lien on the next tax roll against the premises to which the services shall have been rendered, and the charges shall be collected and the lien shall be enforced in the same manner as provided for the collection of taxes assessed upon the roll and the enforcement of the lien for the taxes."). The Court concludes that Plaintiffs have not stated a claim that the City water ordinance violated Plaintiffs' substantive due process rights.

Plaintiffs' contention that the individual Defendants' enforcement of the water ordinance violated their constitutional rights is based on their contention that the ordinance itself is unconstitutional. Because, as noted above, Plaintiffs have failed to state a claim that

16

the ordinance violates the due process clause, their claim regarding the enforcement of the water ordinance is also subject to dismissal.

## B. Nuisance/Noxious Weeds Ordinance

Plaintiffs contend that the noxious weeds provisions of the City's nuisance ordinance violate due process because the ordinance is "constitutionally vague" and fails to provide for meaningful notice.[2]

Plaintiffs contend that the ordinance is unconstitutionally vague because: (1) the City is unable to clearly determine whether the ordinance has been complied with;[3] (2) it applies

---

[2]Plaintiffs' complaint focuses on the following provisions of the nuisance ordinance:

- § 91.31 provides that it is the property owner's duty to cut, destroy and remove all noxious weeds on the property at least 3 times each year, by June 1, July 15, and September 1;

- § 91.32 provides that if the owner fails to remove the noxious weeks, the Public Works Foreman shall do so;

- § 91.33 provides for the recovery of the expenses incurred by the City in removing noxious weeds; and

- § 91.35 provides that the City will publish notice of these requirements once a week for two successive weeks in a newspaper of general circulation in the city.

(Compl. Ex. B, Nuisance Ordinance.)

[3]Plaintiffs allege that they complied with § 91.31 in April 2008, but that Defendants nevertheless mowed Plaintiffs' property on June 16, 2008, and then billed them for it. (Compl. ¶¶ 18, 20(B).)  Defendants note that Plaintiffs failed to assert their compliance with the ordinance in their letter to the City Treasurer challenging the mowing invoice.  (*See* Dkt. No. 19, Pls.' Resp. Br., Ex. D.)  While Plaintiffs' failure to assert compliance in their first

(continued...)

to not only named plants, but also to "any other plant which in the opinion of the City Council is regarded as a common nuisance" (Ord. § 91.30); and (3) its stated purpose is, in part, "to prevent the weeds and grass from becoming unsightly" (Ord. § 91.31).

"[A]n enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). "[L]aws must provide specific standards for those who apply them," and "give a person of ordinary intelligence a reasonable opportunity to understand what is prohibited, so that he may act accordingly." *Id*. at 108-09. "The degree of vagueness that the Constitution tolerates – as well as the relative importance of fair notice and fair enforcement – depends in part on the nature of the enactment." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc*., 455 U.S. 489, 498 (1982). The vagueness doctrine is most strictly applied when the law interferes with the exercise of constitutionally protected rights. *Id.* at 499. A greater degree of vagueness is tolerable in civil enactments than in laws with criminal penalties because the consequences of imprecision are less severe. *Id*. at 498-99; *see also Sheffield v. City of Fort Thomas*, 620 F.3d 596, 614 (6th Cir. 2010) (noting that "perfect clarity and precise guidance have never been required" of a penal ordinance that does not interfere with First Amendment rights); *Assoc. of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 552 (6th Cir. 2007) (noting

---

[3](...continued)
challenge to the invoice is curious, for purposes of analyzing Defendants' motion to dismiss, the Court accepts the allegations in the complaint as true.

that because the ordinance was not a criminal statute, there was no danger of arbitrary penal sanctions or government imposed stigma).

The noxious weeds ordinance is a civil ordinance involving no criminal penalties, and Plaintiffs have not alleged that it interferes with their First Amendment rights. Accordingly, the Court reviews the ordinance under the least stringent standard. The ordinance provides objective criteria governing the property owner's responsibilities and the circumstances under which the City will mow the property. Weeds must be mowed at least three times a y ear by three specific dates. (Ord. § 91.31.) The ordinance contains sufficient standards to give the property owner notice of what is required, and to prevent the City from arbitrarily applying the ordinance.

To the extent Plaintiffs are alleging that their property was taken in violation of the ordinance because they had in fact complied with the ordinance, their claim is barred by the *Parratt* doctrine. In order to state a due process violation for random and unauthorized acts by state employees, a plaintiff must allege the deprivation of a property or liberty interest for which there is no reasonable state remedy provided to correct the deprivation. *Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010) (citing *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986), and *Hudson v. Palmer*, 468 U.S. 517, 533-36 (1984)). Although Plaintiffs allege that they notified the City and the County of the illegality of the mowing charges and that they received no reply, (Compl. ¶ 19(B), (C)), they have not alleged that they ever notified Defendants that the mowing fee

should not have been assessed against them because they had complied with their mowing obligations under the ordinance.[4]  Accordingly, to the extent Plaintiffs maintain that Defendants improperly mowed the Property after they had complied with the ordinance, their complaint does not state a constitutional due process claim because they have not alleged that they had no remedy under state law.  Furthermore, Plaintiffs did not allege a state law claim for the deprivation of property in their complaint, and, even if they had, the Court declines to exercise supplemental jurisdiction over such a claim.  28 U.S.C. § 1367(c).

Plaintiffs contend that the nuisance ordinance also violates due process because it fails to provide for meaningful notice.  Plaintiffs do not suggest that the City failed to give the notice required by the ordinance.  Instead, they contend that the notice provision is itself unconstitutional because it does not provide for actual notice to property owners before the City takes it upon itself to mow the property.

"When an individual is deprived of a protected property or liberty interest, 'procedural due process generally requires that the state provide a person with notice and an opportunity to be heard' before such a deprivation occurs."  *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 572 (6th Cir. 2008) (quoting *Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005)).  Plaintiffs cite *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306 (1950), in support of the proposition that notice by publication was not sufficient, and that the City was

---

[4]Plaintiffs challenged the constitutionality of the ordinance, but did not challenge its application to them under the facts.  (Pls.'s Resp. Br., Ex. D, letters to City Treasurer.)

required to give notice "reasonably calculated" to reach them prior to mowing their Property. *See id.* at 318-20.

Plaintiffs' reliance on *Mullane* is misplaced. "Due process is a flexible concept, and the process required is context specific." *Silvernail v. Kent County*, 385 F.3d 601, 604 (6th Cir. 2004) (citing *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)). In determining what process is due, the court considers:

> (1) the private interest that will be affected by the governmental action; (2) the risk of an erroneous deprivation of such interest through the procedure used along with the probable value, if any, of requiring additional or substitute procedures; and (3) the governmental interest involved, including the burdens that the additional or substitute procedures would create.

*Hughlett v. Romer-Sensky*, 497 F.3d 557, 566 (6th Cir. 2006) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). A post-deprivation process may be constitutionally adequate based on "either the necessity of quick action by the State or the impracticality of providing any predeprivation process." *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 531 (1984)).

Plaintiffs did not receive actual personal notice before the City mowed their Property. Citizens, however, are presumed to know the requirements of the law. *United States v. Ali*, 557 F.3d 715, 726 (6th Cir. 2009). The ordinance itself put them on notice of their duty to mow by three specific dates. In addition, the requirements were published in the local newspaper. By virtue of the ordinance, the weeds would be mowed, either by Plaintiffs or by the City. Plaintiffs' interest in not having the City do the mowing is not a strong interest. Plaintiffs have a stronger interest in not being charged for the mowing. However, Plaintiffs

were invoiced for the mowing, so they had actual notice and an opportunity to contest the charges before they were made a lien on their Property. The Court finds that Plaintiffs' interest in receiving actual, personal notice before the City mowed their Property is impractical, and is outweighed by the City's interest in mowing noxious weeds before they become a public nuisance.

Finally, Plaintiffs contend that the City's enforcement of the noxious weeds ordinance violates their right to equal protection of the laws because the City does not enforce the ordinance on land owned by the City. (Compl. ¶ 21(A).) Plaintiffs allege that City allowed a weed to grow 69 inches tall on City property across the street from Plaintiffs' property. (Compl. ¶ 21(B).).

Plaintiffs' equal protection claim does not allege that the ordinance itself is invalid, but that it is being enforced in a discriminatory manner. Such a claim falls within the doctrine of selective enforcement. *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000) (citing *Futernick v. Sumpter Twp.*, 78 F.3d 1051, 1056 (6th Cir. 1996)). "Selective enforcement claims are judged according to ordinary Equal Protection standards, which require a petitioner to show both a discriminatory purpose and a discriminatory effect." *Id.* "[A] claim for selective enforcement, while not limited to the traditional 'suspect classes,' must nonetheless rest on membership in a class and a government actor's animus against that class." *Boone v. Spurgess*, 385 F.3d 923, 932 (6th Cir. 2004) (internal citation omitted). Plaintiffs have not alleged that they are members of a class or that the City's enforcement of

the ordinance against them and not against the City itself was based on a discriminatory purpose. The Sixth Circuit has suggested that under *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curiam), a selective enforcement claim might also be based on the lack of a rational basis for the government's action. *Boone*, 385 F.3d at 932. To demonstrate that the government action lacks a rational basis, a plaintiff would have to negate every conceivable basis which might support the government action. *Johnson v. Bredesen*, 624 F.3d 742, 747 (6th Cir. 2010). Plaintiffs have not alleged sufficient facts to state a claim that the City had "no rational reason" for distinguishing between Plaintiffs' Property and the City's property.

For all these reasons, Plaintiffs have failed to state a constitutional claim on which relief can be granted with respect to the nuisance ordinance.

## C. § 1985(3) Conspiracy

Plaintiffs have also asserted that the Michigan Municipal League and the City Defendants are liable for conspiracy pursuant to 42 U.S.C. § 1985(3). Defendants have moved to dismiss the § 1985(3) conspiracy claim pursuant to Rule 12(b)(6) for failure to state a claim on which relief can be granted.

In order to state a valid claim under § 1985(3), a plaintiff must demonstrate:

(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to either person or property or a deprivation of any right or privilege of a United States citizen.

*Volunteer Medical Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 223 (6th Cir. 1991) (citing *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828-29,(1983); *Conklin v. Lovely*, 834 F.2d 543, 548 (6th Cir.1987)).

"[I]n order to prove a private conspiracy in violation of the first clause of § 1985(3), a plaintiff must show, inter alia, (1) that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action.'" *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). "[T]he class 'cannot be defined simply as the group of victims of the tortious action.'" *Id.* (quoting *Carpenters*, 463 U.S. at 850).

Plaintiffs have not alleged that the conspiracy was based on any class-based, invidiously discriminatory animus. Accordingly, Plaintiffs have failed to state a claim under § 1985(3).

## V.

Because this Court has determined that Plaintiffs' complaint fails to state any claim on which relief may be granted, Defendants' motions to dismiss pursuant to Rule 12(b)(6) will be granted, and Plaintiffs' motion for judgment on the pleadings in their favor pursuant to Rule 12(c) will be denied.

An order and judgment consistent with this opinion will be entered.


Dated: <u>January 12, 2011</u>               <u>/s/ Robert Holmes Bell</u>
                                            ROBERT HOLMES BELL
                                            UNITED STATES DISTRICT JUDGE